UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERMAN PAUL SOLANO,

              Petitioner,

vs.                                     Case No. 3:20-cv-410-BJD-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

              Respondents.

_____

## **ORDER**

## I.  STATUS

Petitioner Herman Paul Solano is proceeding pro se on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) challenging his St. Johns County conviction for violation of pretrial release, aggravated battery, false imprisonment, shooting into a building, and burglary with an assault or battery.[1]   Respondents filed a

---

1 Petitioner was not in custody for the offense of violation of pretrial release at the time of the filing of his Petition on April 17, 2020 pursuant to the mailbox rule.   See Response at 2, listing the offenses other than the offense of violation of pretrial release.   He received a sentence of 364 days for that offense and was allowed a credit of 428 days of time incarcerated before imposition of his sentence.   As such, Petitioner does not meet the "in custody" requirement to attack that particular offense.   See Medberry v. Crosby, 351 F.3d 1049, 1055 (11th Cir. 2003); 28 U.S.C. § 2254(a).   A federal habeas petitioner must be "in custody" under the conviction or sentence under attack at the time he files his petition.   Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam).   Based on the record, Petitioner was not in custody pursuant to the state judgment for violation of pretrial release when he filed his Petition.

Response to Order to Show Cause (Doc. 10) and an Appendix of Exhibits (Doc. 11).   Petitioner filed an Amended Reply to Answer (Reply) (Doc. 20).[2]

## II.   HABEAS REVIEW

The role of this Court is limited when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254; "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), cert. denied, 142 S. Ct. 441 (2021).   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   Id.

If there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision

_____

2 The Court refers to the exhibits contained in the Appendix of Exhibits (Doc. 11) as "Ex." and references the page number in the bottom center of the page.   For the Petition, Response, and Reply, the Court references the docket and page numbers assigned by the electronic filing system.

that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(e)(1)), cert. denied, 141 S. Ct. 2469 (2021). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).[3] Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576

---

3 The Court finds the reasoning of Brannan persuasive on this point.  See McNamara v. Gov't Emp. Ins. Co., 30 F.4th 1055, 1060-61 (11th Cir. 2022) (reiterating that unpublished opinions may be cited as persuasive authority but are not binding precedent.  See Rule 32.1, Fed. R. App. P.  The Court references other unpublished decisions in this opinion, recognizing that these decisions constitute persuasive authority, not binding precedent.

U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Of import, "[i]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions."   Estelle v. McGuire, 502 U.S. 62, 67 (1991).   Indeed, a habeas petition grounded on issues of state law provides no basis for federal habeas relief as a violation of state statute or rule of procedure does not constitute a violation of the federal constitution. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (per curiam).   As such, a federal writ is only available in cases amounting to federal constitutional error.   Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993).   This is so even if the claim is "couched" in terms of alleged constitutional violations, like due process.   Branan, 861 F.2d at 1508.

The two-part Strickland standard governs claims of ineffective assistance of counsel.[4]   Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).   See Freeman v. Comm'r, Ala. Dep't of Corr., 46 F.4th 1193, 1220 (11th Cir. 2022) ("In an ineffective

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

assistance of counsel claim, § 22543(d)'s terms are judged by the standard set forth in <u>Strickland v. Washington</u>."), <u>cert. denied</u>, 143 S. Ct. 1785 (2023). Pursuant to this standard, a defendant must show: (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.   <u>Strickland</u>, 466 U.S. at 687.   A district court need not address both prongs if a petitioner makes an insufficient showing on one.   <u>Fifield v. Sec'y, Dep't of Corr.</u>, 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam) (relying on <u>Strickland</u>), <u>cert. denied</u>, 142 S. Ct. 788 (2022).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"  <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 908 (11th Cir. 2021) (quoting <u>Strickland</u>, 466 U.S. at 687), <u>cert. denied</u>, 142 S. Ct. 1234 (2022).   Additionally, combining the deferential standard for judging the performance of counsel with the extra layer of deference that § 2254 provides, the resulting double deference "is doubly difficult for a petitioner to overcome[.]" <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 911 (2011).

To determine whether Petitioner is entitled to habeas relief, this Court must ask (1) whether the [state court] decisions were 'contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined' in Strickland, or (2) whether the . . . decisions were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"   Whatley v. Warden, Ga. Diagnostic & Classification Ctr., 927 F.3d 1150, 1175 (11th Cir. 2019) (citations omitted), cert. denied, 141 S. Ct. 1299 (2021).   The AEDPA standard is quite difficult to meet as a state court's decision must be given deference and latitude.

A claim of ineffective assistance of appellate counsel is also governed by the Strickland standard.   Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam), cert. denied, 559 U.S. 1010 (2010).   As in a claim of ineffective assistance of trial counsel, failure to establish either prong of the Strickland standard is fatal to a claim of ineffective assistance of appellate counsel.   Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

In applying the two-pronged standard established in Strickland, the Court is mindful that appellate counsel may weed out weaker, although meritorious arguments, as there is no duty under the Sixth Amendment to raise every non-frivolous issue.   Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016).   Regarding the prejudice prong, "[a]ppellate] [c]ounsel's performance will be deemed prejudicial if we find that the neglected claim

6

would have a reasonable probability of success on appeal." Tuomi, 980 F.3d at 795 (quoting Philmore, 575 F.3d at 1265) (internal quotation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Overstreet, 811 F.3d at 1287 (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000) quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

## III.  GROUNDS

Petitioner raises eleven grounds in the Petition:

(1) the trial court erred in failing to appoint a second expert to determine Petitioner's competency in violation of Fla. Stat. § 916.12(2) and Florida Rule of Criminal Procedure 3.210;

(2) the trial court erred in failing to discharge counsel after a Nelson hearing showing irreconcilable differences;

(3) the trial court erred by summarily denying a motion to withdraw a plea to a charge of possession of a firearm by a convicted felon without opportunity to amend;

(4) ineffective assistance of appellate counsel for failure to argue that the trial court erred and deprived Petitioner of due process of law by using the standard jury instruction for shooting into a building which erroneously defined malice;

(5) prosecutorial misconduct resulting in Petitioner's conviction for burglary being obtained by the use of

false or perjured testimony in violation of the Due Process Clause;

(6) ineffective assistance of counsel for failure to object to the prosecutor's use of text messages obtained from Petitioner's cell phone;

(7) ineffective assistance of counsel for failure to properly cross-examine and impeach Kelly Solano, the victim;

(8) ineffective assistance of counsel for failure to object to the Florida Department of Law Enforcement (FDLE) lab report being admitted into evidence and Deputy Keegan being allowed to testify regarding the contents of the report in violation of Petitioner's right to confrontation;

(9) ineffective assistance of counsel for failure to call Jimmy Blalock, Petitioner's half-brother, to testify;

(10) ineffective assistance of counsel for failure to object to improper and misleading remarks of the prosecutor during closing arguments; and

(11) ineffective assistance of counsel for misadvising Petitioner that he would receive a three-year prison sentence if he entered an open plea of nolo contendere to the offense of possession of a firearm by a convicted felon.

Although Petitioner seeks an evidentiary hearing, Petition at 36, Reply at 39-41, the Court concludes no evidentiary proceedings are required. The pertinent facts are fully developed in the record, or the record otherwise precludes habeas relief; therefore, the Court can adequately assess these

claims without any further factual development.   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## IV.   DISCUSSION

### A.   Ground One

Petitioner claims the trial court erred in failing to appoint a second expert to determine Petitioner's competency in violation of Fla. Stat. § 916.12(2) and Florida Rule of Criminal Procedure 3.210.   Petition at 5-6.   He raised a comparable claim on direct appeal in his pro se brief.[5]   Ex. D at 742, 756-60.   In state court, he essentially raised a state law claim, although he did reference both Pate v. Robinson, 383 U.S. 375, 386-87 (1966) and Drope v. Missouri, 420 U.S. 162 (1975).   Id. at 758-60.   The state filed a notice that it would not respond unless directed to do so.   Ex. E.   On July 25, 2017, the Fifth District Court of Appeal (5th DCA) affirmed.   Ex. F.   Petitioner moved for rehearing, asserting the state court failed to address his due process competency claim.   Ex. G.   The 5th DCA denied rehearing.   Ex. H.   The mandate issued on September 25, 2017.   Ex. I.

To the extent Petitioner complains of the trial court's alleged noncompliance with Rule 3.210, that claim is not a cognizable claim under §

---

5 Petitioner's appellate counsel filed an Anders brief.   Ex. B.   Anders v. Cal., 386 U.S. 738 (1967).

2254.   Notably, although Fla. R. Crim. P. 3.210(b) requires no fewer than two experts to examine an accused to report on competency, failure to require two expert reports is not considered fundamental error.   <u>Green v. State</u>, 598 So. 2d 313, 313-14 (Fla. 2nd DCA 1992) (citing <u>D'Oleo-Valdez v. State</u>, 531 So. 2d 1347 (Fla. 1988)).

Respondents assert Petitioner failed to raise any claim in the federal constitutional sense.   Response at 6-7.   Even liberally construing the documents before the Court, the Court finds Petitioner has not raised a claim of constitutional dimension by asserting that the trial court erred in appointing only one expert to determine competency.

Of import,

> The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. <u>James v. Singletary</u>, 957 F.2d 1562, 1569–70 (11th Cir. 1992) (citing **Pate v. Robinson**, 383 U.S. 375, 384–86, 86 S.Ct. 836, 841–42, 15 L.Ed.2d 815 (1966); <u>Dusky v. United States</u>, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). The test for determining competence to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." <u>Dusky</u>, 362 U.S. at 402, 80 S.Ct. at 789.
>
> A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a

> competency hearing after the defendant's mental competence was put at issue. **Pate**, 383 U.S. at 385, 86 S.Ct. at 842. To prevail on the procedural claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." James, 957 F.2d at 1572 n. 15 (citing Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987)). Even if a defendant is mentally competent at the beginning of his trial, the trial court must continually be alert for changes which would suggest that he is no longer competent. **Drope v. Missouri**, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975).

Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995) (emphasis added), cert. denied, 517 U.S. 1247 (1996).

Here, Petitioner's claim was not that the trial court failed to hold a competency hearing after Petitioner's mental competence was put at issue. Instead, he complains that the trial court erred by only appointing one expert to determine his competency, in violation of state law. As such, he has failed to raise a ground cognizable on federal habeas review.

The record shows defense counsel filed a Suggestion of Mental Incompetence to Stand Trial. Ex. A at 40-41. The court entered an Order for Mental Examination appointing Dr. Roger Davis to examine Petitioner. Id. at 42-43. Dr. Davis submitted his August 22, 2015 report to the court. Id. at 45-49. The report reflects that Dr. Davis examined Petitioner at the St. Johns County Detention Center on August 21, 2015 for 1.2 hours to assess

Petitioner's competency to proceed.  Id. at 45.   He utilized the following procedures:   record review, pertinent history, mental status examination and competency interview.   Id.   After undergoing a record review, Dr. Davis noted, at the detention center Petitioner had been prescribed Zoloft, an antidepressant, and had been diagnosed with an unspecified depressive disorder.  Id.  Dr. Davis noted a claim of a history of mental health issues including a purported suicide attempt.   Id.   Dr. Davis also reviewed a Flagler Hospital note that Petitioner had suffered a mini-stroke, and has been diagnosed with atrial fibrillation, glaucoma, and alcohol abuse.   Id.

Dr. Davis conducted a mental status examination and a competency interview.   Id. at 46-48.   Dr. Davis reported his impressions and gave his opinion that Petitioner "has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and he has a factual and rational understanding of the proceedings against him."   Id. at 49. On August 31, 2015, the court conducted a competency hearing on the questions of competency raised by Petitioner and heard argument of counsel.[6] Id. at 50.   The court found Petitioner competent to proceed.   Id.

---

6 Petitioner states he has no memory of a competency hearing.   Petition at 5.   The transcript of the competency proceeding is not in the record before the Court but the order finding Petitioner competent to proceed references an August 31, 2015 hearing and the court's consideration of the argument of counsel.

Here, Petitioner's mental competence was put at issue, the court appointed an expert to examine Petitioner and report to the court, a thorough examination and assessment took place, the mental health expert reported his assessment of Petitioner's competency to the court, the court conducted a competency hearing and heard argument of counsel, and finally, the court ruled Petitioner was competent to proceed.   As such, Petitioner is not entitled to habeas relief on this ground.

## B.  **Ground Two**

In his second ground, Petitioner claims the trial court erred in failing to discharge counsel after a <u>Nelson</u>[7] hearing showing irreconcilable differences. Petition at 7-9.   In essence, Petitioner challenges the adequacy of the trial court's <u>Nelson</u> hearing.   <u>Id</u>. at 8-9.   He raised and exhausted a comparable claim on direct appeal.   Ex. D at 742, 760-63.   He argued the trial court erred by not discharging counsel after a <u>Nelson</u> hearing, blaming the inadequacy of the hearing itself.   <u>Id</u>. at 762-63.   The 5th DCA affirmed.   Ex. F.

The record shows Petitioner filed a Motion/Request to Discharge Court Appointed Attorney.   Ex. A at 79-81.   A hearing was conducted on September

---

7 <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973) (holding that if an indigent defendant expresses a desire to discharge court-appointed counsel due to counsel's alleged ineffectiveness, the court must hold a hearing to determine whether there is reasonable cause to believe that court-appointed counsel is not rendering effective assistance).

19, 2016.  Id. at 202-27.   Ms. Renee Peshek explained her rationale and strategy for trial.   She said her investigator met with Petitioner and then counsel met with Petitioner five times prior to meeting with him a week before the hearing.   Id. at 211.   Ms. Peshek noted that she had filed motions in limine.   Id. at 212.   After considering Petitioner's contentions and counsel's responses, the court found defense counsel were providing effective assistance. Id. at 216.   The court recognized that Ms. Peshek and Mr. Mosley were seasoned trial attorneys, and Petitioner was privileged to have two attorneys assisting him with his case.   Id.   Given the choice to proceed pro se or with his counsel, Petitioner elected to proceed with the public defender.   Id. at 227.

Respondents contend the adequacy of a trial court's Nelson hearing is a matter of state law.   Response at 7.   Upon review, that is the case.   Johnson v. Sec'y, Fla. Dep't of Corr., No. 3:17-cv-731-J-32JRK, 2020 WL 2114652, at *6 (M.D. Fla. May 4, 2020) (not reported in F. Supp.).   As noted, in Johnson,

> The United States Supreme Court has not established a procedure for when a represented indigent criminal defendant does not want to proceed pro se, but instead wants another court-appointed lawyer because his current lawyer is allegedly ineffective. See, e.g., United States v. Garey, 540 F.3d 1253, 1262-66 (11th Cir. 2008) ("Although the Sixth Amendment guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. An indigent criminal defendant 'does not have a right to have a particular lawyer represent him, nor

14

to demand a different appointed lawyer except for good cause.'" (quoting <u>Thomas v. Wainwright</u>, 767 F.2d 738, 742 (11th Cir. 1985)). This Court will not reexamine state court determinations on issues of state law. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Since Petitioner's claim regarding a <u>Nelson</u> inquiry presents a state law claim concerning the trial court's failure to follow the procedures of a state law requirement, Petitioner is not entitled to federal habeas relief on that claim, as there has been no breach of a federal constitutional mandate. <u>Ortiz v. McNeil</u>, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. Dec. 2, 2010) ("Any complaint about the lack of a proper <u>Nelson</u> inquiry raises an issue of state law that is not cognizable in this proceeding.").

<u>Johnson</u>, 2020 WL 2114652, at *6.

Indeed, whether the court performed a proper <u>Nelson</u> inquiry is a matter of state law.   "Federal habeas relief is not available to reexamine state decisions on its own procedural rules."   <u>Ortiz v. McNeil</u>, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. Dec. 2, 2010) (not reported in F.Supp.2d) (citing <u>Estelle</u>; <u>Wallace v. Turner</u>, 695 F.2d 545, 548 (11th Cir. 1983); <u>Branan</u>).   The federal constitution does not mandate the <u>Nelson</u> procedure; therefore, this is purely an issue of state law not cognizable in this habeas proceeding.   <u>Duncan v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:18-cv-2099-MCR-GRJ, 2021 WL 4464431, at *6 (N.D. Fla. Aug. 20, 2021), <u>report and</u>

<u>recommendation adopted by</u> 2021 WL 4465996 (N.D. Fla. Sept. 29, 2021).   As such, ground two is due to be denied.

### C.   Ground Three

In ground three, Petitioner claims the trial court erred by summarily denying a motion to withdraw a plea to a charge of possession of a firearm by a convicted felon without opportunity to amend.   He raised and exhausted a similar claim on direct appeal.   Ex. D at 742, 763-64.   He claimed he should have been given a one-time opportunity to amend the motion, citing <u>Spera v. State</u>, 971 So. 2d 754 (Fla. 2007) (announcing a narrow resolution holding that in dismissing a first postconviction motion based on a pleading deficiency, a court must give at least one opportunity to correct the deficiency unless it cannot be corrected).   <u>Id</u>. at 764.   The 5th DCA per curiam affirmed.   Ex. F.

Of note, a motion to withdraw a plea is not comparable to a postconviction motion under Fla. R. Crim. P. 3.850 (a motion to vacate a criminal judgment and sentence, known as a postconviction motion under 3.850).   The narrow resolution adopted in <u>Spera</u> has not been extended by the state courts as evidenced by the state court's ruling.

The record demonstrates Petitioner filed a Motion to Withdraw Plea of No Contest to Possession of Firearm by in [sic] State Felon.   Ex. A at 186.

The court, finding the motion provided no legal or factual basis for withdrawal of the plea, denied the motion finding it legally insufficient.   Id. at 196.

The record contains the plea proceeding.   Id. at 697-704.   The record shows Petitioner was sworn.   Id. at 697-98.   Petitioner confirmed that he was to plead no contest to the second-degree felony charge of possession of a firearm by a convicted felon.   Id. at 698.   The court advised that it is a crime punishable by up to 15 years in state prison, although Petitioner "may be considered for a lesser sentence."   Id.   The court believed that because Petitioner was found in actual possession, there would be a three-year minimum mandatory term.   Id. at 698.   Petitioner confirmed that he wanted to enter the plea.   Id. at 699.   The court apprised Petitioner of his constitutional rights.   Id. at 700-702.   Petitioner stated he understood them, and he understood he would be giving up those rights by entering his plea.   Id. at 701-702.

On the record, Petitioner said no one had used force, threats, or pressure or intimidation to get him to enter the plea, and no one promised anything to get him to enter the plea.   Id. at 702.   The state provided a factual basis for the plea.   Id. at 703.   The court asked, "has anyone coached you or told you to testify falsely because of any promise or understanding which has not been told to me?"   Id.   Petitioner responded in the negative.   Id.   The court found

Petitioner understood the nature and consequences of his plea, the court found a factual basis for the plea, and the court accepted the plea.   Id. at 704.   The court sentenced Petitioner to 15 years in prison for possession of a firearm by a convicted felon.   Id. at 314.

Respondents contend Petitioner presented an issue of state law on direct appeal.   Response at 9.   Upon review, Petitioner relied on state law to raise his claim.   The purpose of a federal habeas corpus proceeding is to review the lawfulness of a petitioner's custody to determine whether that custody is in violation of the Constitution or law or treaties of the United States.[8]   Coleman v. Thompson, 501 U.S. 722, 730 (1991).   "Without a cognizable federal constitutional claim, there can be no federal habeas corpus relief."   Fuster-Escalona v. Fla. Dep't of Corr., 170 F. App'x 627, 630 (11th Cir. 2006) (per curiam) (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)), cert. denied, 549 U.S. 1213 (2007).

On habeas review, a federal court's only concern is whether the defendant was convicted in violation of his constitutional rights.   Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993).   Since the reviewing court is

---

[8] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

strictly limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68.   Therefore, "[t]his limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"   Branan, 861 F.2d at 1508 (quoting Willeford v. Estelle, 538 F.2d 1194, 1998 (5th Cir. 1976)). Indeed, "state law is what the state courts say it is."   Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1299 (11th Cir. 2017), cert. denied, 139 S. Ct. 193 (2018).

In this ground, Petitioner has not articulated a cognizable claim for federal habeas corpus relief.   Id.   ("a habeas petition grounded on issues of state law provides no basis for habeas relief").   There has been no breach of a federal constitutional mandate in this ground; therefore, this Court is bound by the Florida court's interpretation of its own laws.   See McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992). As such, ground three is denied.

## D.   Ground Four

Petitioner raises a claim of ineffective assistance of appellate counsel for failure to argue that the trial court erred and deprived Petitioner of due process of law by using the standard jury instruction for shooting into a building which

erroneously defined malice.   Petition at 11-12.   Petitioner urges this Court to find that his appellate counsel was ineffective for failure to argue that the use of the standard jury instruction was not only error, but it deprived Petitioner of due process of law.   Id.

Petitioner faced a charge of shooting into a building in violation of Fla. Stat. § 790.19.   The court instructed the jury on the three elements that had to be proved beyond a reasonable doubt: (1) Petitioner shot a firearm; (2) he did so within a public or private building occupied or unoccupied; (3) the act was done wantonly and maliciously.   Ex. A at 632.   The court instructed, "[w]antonly means consciously and intentionally with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person."   Id.   The court further instructed: "[m]aliciously means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or to the property of another person."   Id. at 632-33.

The standard jury instruction for malice given by the court is referred to as legal, or technical malice.   Reed v. State, 837 So. 2d 366, 369 (Fla. 2002). Petitioner contends appellate counsel should have argued that Petitioner was deprived of due process of law because the court did not give the actual malice,

or malice in fact instruction which requires proof of evil intent or motive rather than legal malice which may be inferred from one's acts.

The record demonstrates that Petitioner filed a state petition for writ of habeas corpus raising this claim of ineffective assistance of appellate counsel. Ex. M.  The state responded.  Ex. N.  Petitioner replied.  Ex. O.  The 5th DCA denied the petition on its merits.   Ex. P.

In his state court petition, Petitioner raised a claim of ineffective assistance of appellate counsel for failure to argue that the trial court erred and deprived Petitioner of due process of law by using the standard jury instruction for shooting into a building which erroneously defined malice.   Ex. M at 1178.   Thus, he exhausted the claim of ineffective assistance of appellate counsel by raising it in the state habeas petition.   The state has addressed the exhausted claim of ineffective assistance of appellate counsel in its Response. Response at 10-11.

In his state habeas petition, Petitioner referred to the definition of "maliciously" adopted in State v. Gaylord, 356 So. 2d 313, 314 (Fla. 1978), Ex. M at 1183, and argued the court gave the Standard Jury Instruction which erroneously defined maliciously, not in keeping with the definition used in Gaylord.

Upon review, Florida adopted the malice in fact instruction for aggravated child abuse.   Gaylord, 356 So. 2d at 314.   Thereafter, the Florida Supreme Court (FSC) found a trial court erred when it gave the jury definition of legal, or technical malice included in the standard jury instruction rather than that adopted by the FSC in Gaylord for the crime of aggravated child abuse and requested by the defendant.   Reed, 837 So. 2d at 369.

Petitioner has not shown that Florida has adopted the malice in fact instruction for the crime of shooting into a building.   In fact, Florida has consistently adopted the legal malice instruction for shooting into a building. State v. Kettell, 980 So. 2d 1061, 1063-64 (2008).   Thus, for shooting into a building, "[m]aliciously means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or to the property of another person."   Id. at 1063.   However, "merely shooting a firearm into a building does not establish the third element."   Browning v. Sec'y, Fla. Dep't of Corr., No. 3:17-cv-905-J-32PDB, 2020 WL 5350308, at *8 (M.D. Fla. Sept. 4, 2020) (citing State v. Kettell, 980 So. 2d 1061, 1062 (Fla. 2008)).

For a claim of ineffective assistance of appellate counsel, a petitioner's burden is a heavy one; he must show that his appellate counsel was objectively unreasonable in failing to raise the matter on appeal.   If a petitioner satisfies

that requirement, he must then show a reasonable probability that, but for counsel's unprofessional errors, there would have been a reasonable probability of success on appeal.

The 5th DCA's ruling is entitled to deference.   Ex. P.   The state court's determination is consistent with federal precedent.   The criteria for proving ineffective assistance of appellate counsel parallels that of ineffective assistance of trial counsel, with the second prong focusing on whether the deficiency in the performance compromised the appellate process to the degree as to undermine confidence in the correctness of the result.

It is a difficult task to show appellate counsel was incompetent.   Smith v. Robbins, 528 U.S. 259, 288 (2000).   "Appellate counsel's performance will be deemed prejudicial only if we find that 'the neglected claim would have a reasonable probability of success on appeal.'" Farina v. Sec'y, Fla. Dep't of Corr., 536 F. App'x 966, 979 (11th Cir. 2013) (per curiam) (quoting Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991)), cert. denied, 574 U.S 1003 (2014). The Court is not convinced that the suggested claim would have a reasonable probability of success on appeal.

As noted by Respondents, Florida's standard jury instruction uses the definition of legal malice, not actual malice.   Furthermore, the FSC has not rejected the malice in law instruction for the crime of shooting into a building,

as done in <u>Gaylord</u> for the crime of aggravated child abuse.   Therefore, Petitioner's contention that appellate counsel should have pressed the issue is unsupported by authority.

Had Petitioner's appellate counsel raised the claim Petitioner now contends should have been raised on direct appeal, no appellate relief would have been forthcoming as evinced by the 5th DCA's decision denying relief on the claim of ineffective assistance of appellate counsel.   Ex. P.   Thus, Petitioner has failed to show a reasonable probability the outcome of the direct appeal would have been different had appellate counsel argued as Petitioner's suggests appellate counsel should have on direct appeal.

Petitioner has not shown that the 5th DCA decided his claim of ineffective assistance of appellate counsel in a manner contrary to <u>Strickland</u>, or that the 5th DCA's application of <u>Strickland</u> was objectively unreasonable. The denial of relief on the ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of <u>Strickland</u>.   Therefore, the 5th DCA's decision is entitled to deference and ground four is due to be denied.

Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his appellate counsel ineffective.   Thus, he has

failed to demonstrate a constitutional violation.   As such, he is not entitled to habeas relief on ground four.

### E.   Ground Five

Petitioner claims prosecutorial misconduct resulted in Petitioner's conviction for burglary being obtained by the use of false or perjured testimony in violation of the Due Process Clause.   Petition at 13-18.   As noted by Respondents, Petitioner raises a <u>Giglio</u>[9] violation.   Response at 11-16.

Petitioner raised a comparable claim in ground A of his Amended Motion for Postconviction Relief.   Ex. J at 837-43.   The circuit court denied this claim and the motion.   <u>Id</u>. at 961-67.   Petitioner appealed.   <u>Id</u>. at 1156.   On April 7, 2020, the 5th DCA per curiam affirmed the decision of the trial court.   Ex. K.   The mandate issued on May 1, 2020.   Ex. L.   As such, this ground is exhausted.

The circuit court denied the claim relying on the requirements for establishing a <u>Giglio</u> violation.   Ex. J at 959-61.   Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court applied the applicable standards set forth in <u>Giglio</u> in addressing this ground.   The Court next considers whether the state court unreasonably applied those principles

---

9 <u>Giglio v. United States</u>, 405 U.S. 150 (1972) (to establish a <u>Giglio</u> violation, a defendant must demonstrate the testimony was false, the prosecutor knew the testimony was false, and the statement was material).

to the facts or premised its adjudication on the claim on an unreasonable determination of the facts.

Petitioner contends the <u>Giglio</u> violation occurred when the state permitted the victim, Mrs. Solano, to testify as to the intent behind a text message.   During a series of texts, she texted, "[n]o, do not come here."   At trial, she testified this statement meant she did not want Petitioner to come to her house.   Petitioner contends that this message was sent from Mrs. Solano's place of work; therefore, she meant do not come to my place of work. Petitioner submits that a <u>Giglio</u> violation occurred because the state did not correct Ms. Solano and referenced her testimony throughout closing argument to support the state's contention that Petitioner was not invited to the home.

The circuit court denied relief finding the state's argument persuasive that only Ms. Solano could know her intent behind her statement, and she testified she meant do not come to my house.   Ex. J at 964.   The court found Petitioner's contention that the only reasonable interpretation of the statement was that she did not want to be confronted at work was wholly speculative.   <u>Id</u>. at 965.   In rejecting Petitioner's claim, the court explained: "[s]peculation could just as easily support (and in fact more plausibly supports) that Mrs. Solano did not want Defendant to come *anywhere* to confront her about his suspicion that she was having an affair with his brother, and

26

particularly supports that she did not want him to awaken her at her residence at 1:00 a.m. armed with a handgun." Id. To the extent Petitioner wanted the state to impeach its own witness, the court concluded "[t]his cannot support a *Giglio* violation." Id.

Finally, the court found, even assuming Petitioner could theoretically demonstrate the state knew that Mrs. Solano was dishonest in her response as to the meaning of the text message, this "singular statement" did not materially affect the outcome of the proceedings. Notably, there was considerable evidence that Petitioner's entry into Mrs. Solano's residence was uninvited, including the fact that it was apparently a forced entry. Id. at 966-67. This was compounded by the fact of Petitioner's own trial testimony. Id. at 967. Indeed, the trial record shows that on cross-examination the prosecutor inquired:

> Without permission. You did not have permission to go to that house on that evening, did you?
>
> A    Not that evening.
>
> Q    So you went there without permission. You entered the home with the intention, number one, knowing you were going to violate a pretrial release order. Correct?
>
> A    Yes, sir.

Ex. A at 603-604.

Upon review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on <u>Giglio</u>. Moreover, Petitioner has not shown the state court unreasonably applied <u>Giglio</u> or unreasonably determined the facts. Finally, the record and reasonableness standard support the state court's findings and conclusions.

Therefore, applying the AEDPA deference standard, Petitioner is not entitled to habeas relief on the <u>Giglio</u> claim. The Court concludes the 5th DCA's decision affirming the trial court's decision is not contrary to, nor an unreasonable application of controlling United States Supreme Court precedent. As Petitioner has failed to demonstrate that the adjudication of the state court was contrary to or an unreasonable application of any clearly established federal law as determined by the United States Supreme Court or an unreasonable determination of the facts, Petitioner is not entitled to habeas relief on his claim of a <u>Giglio</u> violation.

To the extent Petitioner is attempting to raise a claim of ineffective assistance of trial counsel in this regard, it is wholly unsupported. Petition at 13. <u>See</u> Response at 16. Petitioner has failed to demonstrate either deficient performance or prejudice in this regard. Therefore, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.

## F.   Ground Six

Petitioner claims his trial counsel was ineffective for failure to object to the prosecutor's use of text messages obtained from Petitioner's cell phone. Petition at 19-23.   Petitioner raised a similar claim in ground B of his Amended Motion for Postconviction Relief.   Ex. J at 843-48.   The circuit court denied post-conviction relief.   Id. at 967-71.   Petitioner appealed.   Id. at 1156.   The 5th DCA affirmed.   Ex. K.   Thus, the claim is exhausted.

Here, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court applied the two-pronged Strickland standard. Ex. A at 960-61.   Next, the Court considers whether the state court unreasonably applied that principle to the facts or premised its adjudication on the claim on an unreasonable determination of the facts.

In rejecting this ground, the court found that any objection would have been futile because the messages were taken from an exchange between Petitioner and Mrs. Solano, and Mrs. Solano's cell phone was procured through a valid search warrant and she had consented to a search of her phone; therefore, even upon objection to the printouts obtained from Petitioner's phone, the state would have simply introduced the identical records from Mrs. Solano's phone.   Ex. J at 968-69.   Furthermore, even assuming the printouts were successfully excluded, the state would have offered Mrs. Solano's

29

testimony regarding the contents of their exchange and her testimony would have been admissible.   Id. at 969.   Either way, counsel was not ineffective for any failure to object to the printouts obtained from Petitioner's phone.   Id.

Perhaps even more significantly, Petitioner cannot meet the prejudice prong.   Id. at 970.   The record shows Petitioner did not have permission to enter the residence, as acknowledged by Petitioner in his trial testimony.   Id. Thus, the text messages "were inconsequential to the verdict" due to wealth of evidence showing Petitioner was uninvited.   Id. at 970-71.

Finding neither deficient performance nor prejudice, the court denied this ground.   Upon review, the circuit court properly applied the Strickland standard.   The 5th DCA affirmed.   Therefore, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1).   Applying the look-through presumption set forth in Wilson, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Petitioner has not demonstrated that the state court unreasonably applied Strickland or unreasonably determined the facts.   Thus, the 5th DCA's decision, although unexplained, is entitled to AEDPA deference.

The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable

determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground six of the Petition.

## G.   Ground Seven

In his seventh ground, Petitioner claims his trial counsel was ineffective for failure to properly cross-examine and impeach Mrs. Solano, the victim. Petition at 24-26.   Petitioner raised a comparable claim in ground C of his Amended Motion for Postconviction Relief.   Ex. J at 848-60.   The circuit court denied post-conviction relief.   Id. at 971-77.   Petitioner appealed.   Id. at 1156.   The 5th DCA affirmed.   Ex. K.

This ground is exhausted.   As noted previously, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court applied the two-pronged Strickland standard.   The Court next takes under consideration whether the state court unreasonably applied that principle to the facts or premised its adjudication on the claim on an unreasonable determination of the facts.

Petitioner contends he lacked the mental intent to commit an offense when he entered Mrs. Solano's trailer.   Petition at 24.   Mrs. Solano's trial testimony was that Petitioner entered the bedroom and announced his intention to kill her and then shot the gun several times near her head and beat her about the head and face with the gun before Mrs. Solano picked up

31

the lamp and swung it at him.   Id. at 25.   Petitioner complains his counsel performed deficiently by failing to impeach Mrs. Solano with her prior inconsistent deposition testimony, sworn recorded interviews with Detective McGinnis and Detective English, and her August 22 phone conversation with Petitioner.   Id. at 26.

Petitioner asserts that his sole intention was to enter the trailer and shoot and kill himself in front of Mrs. Solano.   Id.   He references and relies on his trial testimony that he did not shoot the gun or strike Mrs. Solano until she attacked him with a can of hair spray and a lamp, and he acted in self-defense.   Id.

The probable cause statement contained in the arrest report dated July 29, 2015 includes the following.   Ex. A at 17.   The victim reported she was in bed about to go to sleep when Petitioner kicked open the bedroom door and then closed it and barricaded it with a large TV and entertainment center.   Id. The victim said Petitioner pointed a handgun at her and said he was going to kill her and then commit suicide.   Id.   She told the police that Petitioner fired approximately six shots next to her head, and when Petitioner stopped firing, he began to strike her in the head and face with the gun and his fist.   Id.   At this point, the victim tried to escape, pushed the TV away from the door, but then Petitioner knocked her to the ground and started kicking her.   Id.   The

victim grabbed a lamp, the only source of light in the room, and tried to defend herself with the lamp.  Id.  When Petitioner exited the bedroom, the victim escaped.  Id.

The police investigation revealed that the evidence supported the victim's statement.  Id. at 30, 98-118.  There was evidence of the shooting and the beating, consistent with the victim's statement.  Id. at 98-108.

At trial, Mrs. Solano testified relatively consistently with her statement given to the police.  Ex. A at 420-63.  She described Petitioner slamming the door open.  Id. at 440.  Although Mrs. Solano did not mention that Petitioner said he was going to commit suicide after killing her, Mrs. Solano said Petitioner told her he was going to kill her.  Id. at 444.  Mrs. Solano described Petitioner shooting the gun and the bullets striking the headboard of the bed. Id.  Mrs. Solano also spoke of her attempt to defend herself with a lamp.  Id. at 446.  She described the entertainment center that had been slid over by Petitioner.  Id. at 448.  Mrs. Solano said Petitioner hit her with the gun and his fists.  Id.  Finally, Mrs. Solano attested she did not invite Petitioner over to the house.  Id. at 450.

On cross-examination, when Mrs. Solano denied that Petitioner told her he was going to kill himself, defense counsel brought up the interview with Detective McGinnis and Detective English.  Id. at 470.  When asked if she

33

remembered telling both detectives that Petitioner said he was going to kill himself, Mrs. Solano said she did not recall that fact.   Id.

On cross-examination of Detective McGinnis, defense counsel referred to the interviews of the victim by Detective McGinnis and Detective English.   Id. at 528.   Defense counsel pointed out the differences between the reports, including the fact that the victim said Petitioner first barricaded the door and then fired shots, but later on Mrs. Solano said Petitioner shot first and then barricaded the door.   Id. at 528-29.   Detective attested the victim's statements were different.   Id.

Petitioner testified at trial.   Id. at 578-609.   He said he went into Mrs. Solano's bedroom and an argument ensued.   Id. at 586.   He testified Mrs. Solano jumped off the bed and hit Petitioner with a can of hair spray or some similar object.   Id. at 586-87.   Petitioner said he fired shots, but not at Mrs. Solano.   Id. at 587.   Petitioner testified that Mrs. Solano beat him with a lamp.   Id.   Petitioner testified that he never moved the entertainment center to block the doorway.   Id. at 588.   He attested the bedroom door was closed when he arrived.   Id. at 597-98.   He admitted hitting Mrs. Solano with his hands.   Id. at 601.   He testified he did not have permission to go the house that evening.   Id. at 603.   He said his intent was to shoot himself with a gun. Id. at 604.   Petitioner testified that when Mrs. Solano departed, he stabbed

himself in the heart with scissors.   Id. at 605.   On re-direct, he testified he did attempt to shoot himself, but the gun was out of bullets.   Id. at 608.

In denying this claim of ineffective assistance of counsel, the trial court determined that Petitioner did not establish the requisite prejudice from the alleged failure of counsel to impeach Mrs. Solano to warrant relief under Strickland.   Ex. J at 975.   Of import, the court concluded that, "[e]ven if the jury had found Mrs. Solano's testimony regarding when Defendant first fired the gun at her to be less credible as a result of the impeachment, and even if the jury had found that Defendant initially only intended to kill himself in front of Mrs. Solano, all of Defendant's convictions would nonetheless have been supported by the record."   Id.   The court explained its reasoning, including the fact that the court found Petitioner's version of the events "inherently less credible" than Mrs. Solano's version.   Id. at 977.   The court surmised, the fact that Petitioner severely beat the victim negated his contention that he was simply acting in self-defense.   Id.

Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had acted as Petitioner suggests she should have, it would have altered the outcome of the proceeding.   Here, the circuit court applied the two-pronged Strickland standard.   The state court was objectively reasonable in its Strickland inquiry and in concluding Petitioner

did not meet the prejudice prong.   Since Petitioner made an insufficient showing on one prong, the Court need not reach the other.   Fifield, 849 F. App'x at 833 (relying on Strickland).

The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth Amendment violation under the United States Constitution.   As such, Petitioner is not entitled to habeas relief on ground seven.

## H.   Ground Eight

In his eighth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to object to the FDLE lab report being admitted into evidence and Deputy Keegan being allowed to testify regarding the contents of the report in violation of Petitioner's right to confrontation.   Petition at 27-29.

36

Petitioner raised a comparable claim in Claim D of his Amended Postconviction Motion.   Ex. J at 860-65.   The circuit court denied relief.   Id. at 978-79. The 5th DCA affirmed.   Ex. K.   Thus, this claim is exhausted.

Notably, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court applied the two-pronged Strickland standard in addressing Petitioner's claim of ineffective assistance of counsel.   The Court next considers whether the state court unreasonably applied that principle to the facts or premised its adjudication on the claims on an unreasonable determination of the facts.

The record includes a FDLE Laboratory Report dated March 17, 2016. Ex. A at 117-18.   The parties stipulated to a DNA report, and the DNA report was admitted as State's Exhibit No. 27.   Id. at 565.   Petitioner complained that the stipulation deprived him of his constitutional right to confront the FDLE analyst.

In denying this ground, the court noted that Kristine Keegan, the crime scene technician, testified that the report confirmed that both the knife and the handgun exhibited DNA from both Petitioner and Mrs. Solano.   Ex. J at 978.   In denying Petitioner's claim, the court explained:

> Defendant's own allegations demonstrate that any prejudice resulting from counsel's stipulation to the admission of the DNA report is purely speculative.

> Nowhere in Defendant's motion does he assert any facts supporting a basis for attacking the reliability of the DNA results. Defendant's contention that the DNA evidence would necessarily have been excluded if his counsel had refused to stipulate to the introduction of the FDLE report is clearly predicated on the factually unsupported presumption that the State would not have been able to produce the FDLE analyst to testify.

Id. at 978-79.

The record shows the state listed the analyst, L. SukHan Warf, as a state's witness. Ex. A at 73. Two FDLE lab reports, one dated March 17, 2016, and one dated April 27, 2016, are listed as evidence. Id. As there was a stipulation, the state did not call the analyst. The court surmised that any examination of the analyst would have proved fruitless as there was only Petitioner's conjecture that the analyst used poor or deficient scientific methodology in conducting the test or in calculating or using the population frequency statistics. Ex. J at 979. Finding Petitioner's contention based on mere speculative assertions, the court denied the claim. Id

Apparently the state was prepared to call the analyst as a witness, if necessary. Instead, the parties entered their stipulation. Any speculation on Petitioner's part that the state would be unable to produce the analyst, or the analyst would be unable to support his analysis is conclusory and unsupported as evinced by the lab report and the listing of the analyst as a state's witness.

38

Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Upon review, the state court's determination is consistent with federal precedent.   Thus, ground eight of the Petition is due to be denied as the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and clearly established Federal law or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to federal habeas relief on ground eight.

## I.   Ground Nine

In ground nine, Petitioner raises a claim of ineffective assistance of counsel for failure to call Jimmy Blalock, Petitioner's half-brother, to testify. Petition at 30-31.   Petitioner raised a similar claim in Claim E of his Amended Motion for Postconviction Relief.   Ex. J at 865-69.   The circuit court denied relief.   <u>Id</u>. at 979-82.   The 5th DCA affirmed.   Ex. K.

Petitioner claimed Mr. Jimmy Blalock would have supported Petitioner's testimony that he was an invited guest to the victim's trailer and defense counsel's failure to interview and call this witness was objectively unreasonable and constituted deficient performance and prejudiced the defense.   Petition at 30.   Petitioner claimed Mr. Blalock's testimony would

have corroborated Petitioner's testimony that he was invited. Id. Additionally, Petitioner alleged that Mr. Blalock would have testified as to Petitioner's intent to shoot himself in front of the victim and that he only struck her in self-defense.[10]   Petition at 30-31.

Petitioner filed a Motion/Request to Discharge Court Appointed Attorney pursuant to Nelson.   Ex. A at 79-81.   The record demonstrates that the trial court conducted a Nelson inquiry during which Petitioner expressed his dissatisfaction with his counsel alleging counsel had failed to investigate and interview Petitioner's two half-brothers, Larry Blalock, and Jimmy Blalock. Ex. A at 205-16.   Ms. Peshek explained that she did not want to call Jimmy Blalock because it would gift wrap a motive for the crime of attempted murder, as previously charged, as Jimmy Blalock could verify that the victim and Larry Blalock had an affair.   Id. at 210.   The court denied the motion finding Petitioner's lawyers were providing effective assistance of counsel.   Id. at 216.

The circuit court, in denying postconviction relief, concluded counsel made a strategic decision not to call Jimmy Blalock.   Ex. J at 981.   The court found of paramount importance, even if Mr. Blalock had testified that the victim told him she wanted Petitioner to come to her house after she got off

---

10 The record is clear; Jimmy Blalock was not present during the offense.

work, Mr. Blalock would have been subjected to cross-examination on the issue of the alleged affair between Larry Blalock and the victim, providing the state with the ammunition it needed to show or argue the real motive behind Petitioner's actions that evening.  Id.  As such, the court held that defense counsel decision not to interview or subpoena Jimmy Blalock "constituted sound trial strategy."  Id.

Also of import, even if Jimmy Blalock testified that the victim had wanted Petitioner to come over, the court found Mrs. Solano's testimony showed she rescinded all permission when she refused Petitioner's entry into her home earlier in the evening and both her testimony and the testimony of the child supported the conclusion that Petitioner's later entry was a forced entry.  Id. at 982.  As such, the court concluded:

> The record thus demonstrates Mr. Blalock's testimony would not have overcome the virtually insurmountable evidence supporting that Defendant's armed entry into Mrs. Solvano's residence and bedroom at 1:00 a.m. on the morning of July 29, 2015, was uninvited, *including Defendant's own admission* that he did not have permission to enter her home on the morning of the 29th.

Id.

Based on the above, the court found neither deficient performance nor prejudice, applying the Strickland two-pronged standard of review.   The

Court finds the state court's determination is consistent with federal precedent as the state court employed the <u>Strickland</u> standard.   Although the 5th DCA's decision is unexplained, it is entitled to AEDPA deference.   Petitioner has failed to demonstrate that the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court. Petitioner is not entitled to habeas relief on ground nine of the Petition.

## J.   Ground Ten

In his tenth ground for postconviction relief, Petitioner raises a claim of ineffective assistance of counsel for failure to object to improper and misleading remarks of the prosecutor during closing arguments.   Petition at 32-33. Petitioner raised a similar contention in Claim F of his Amended Motion for Postconviction Relief.   Ex. J at 869-76.   The circuit court denied relief.   <u>Id</u>. at 982-85.   The 5th DCA affirmed per curiam.   Ex. K.

Petitioner contends the no contact order did not prohibit him from going to or entering the victim's trailer, her place of work, or any other building or structure.   Petition at 32.   Rather, Petitioner contends the order prohibited Petitioner from having contact with the victim, directly or indirectly.   <u>Id</u>.   He

complains that the prosecutor's comment mischaracterized the no contact order as meaning no contact whatsoever, even if upon invitation.   Id.

The Domestic Violence Pretrial Release No Contact Order is dated June 21, 2015.   Ex. A at 90-92.   It states Petitioner is to have no contact with the victim, Mrs. Solano, either directly or indirectly, in any manner.   Id. at 90.   It advises that if the victim tries to communicate with Petitioner, Petitioner is in violation if he communicates with the victim.   Id.   It also states Petitioner is to refrain from criminal activity and possession of a firearm.   Id.   The order granted Petitioner permission to return to an apartment to obtain personal belongings, accompanied by a law enforcement officer.   Id. at 91.

Petitioner objected to the prosecutor's closing argument regarding Petitioner's affirmative defense of invited entry as to the burglary count.   The prosecutor argued:

> First of all, I want to touch on something Ms. Peshek [defense counsel] mentioned about it's not a burglary because he had lived there in the past or he claims he had a key or he had been invited over a few days before.   That doesn't matter.   That's not the law.   Number one, I submit to you, he didn't have the key.   But it doesn't matter.   You can't go in a residence even if you own it, number one, if you've been ordered by a court not to be there, and you certainly can't go in there with a person who is inside that's told you not to come in and said you're not welcome right now and you go in there with a gun to do harm.

Id. at 661.

In denying this claim, the circuit court noted that Petitioner's contention that the violation of a no contact order does not preclude the legal defense of licensed or invited entry to the charge of burglary is supported by the holding in Pilafjian v. State, 210 So. 3d 738, 739-40 (Fla. 5th DCA 2017) (per curiam). Ex. J at 983.   However, the circuit court found any failure to object on defense counsel's part was not prejudicial because there was extensive evidence that Petitioner's entry was uninvited.   Id.   As such, the court found Petitioner failed to satisfy the prejudice prong of Strickland.   Id.

Petitioner also claimed the following argument was improper and his counsel should have objected:

> He went there, by his words, to violate the condition of pretrial release, and he went there and he says – he says to shoot himself.   Well, that would be guilty of the offense of shooting into a building.   Going into someone's home and shooting the weapon at your own head is guilty of shooting into a building.   There's yet another crime he's confessed to intending to commit when he entered that building.   So we've got two crimes he's confessed to entering in there to commit.

Ex. A at 669-70.

Petitioner contends he did not have the requisite intent, and his counsel should have objected to this argument and moved for a mistrial.   Petition at

32.   He submits that had counsel done so, the court would have declared a mistrial.   Id.

The circuit court was not convinced by this argument, finding Petitioner's own testimony showed that he had every intention of entering the home to shoot himself in front of the victim in order to punish or hurt the victim.   Ex. J at 984-85.   The court found this was sufficient evidence of wantonness.   Id. at 985.   Also, the court found that Petitioner knew by shooting inside the house, there would be damage to the victim's property or to some person (Petitioner).   Id.   As such, the court concluded there was no basis for an objection to the prosecutor's argument and defense counsel did not perform deficiently by failing to object.

In reviewing Petitioner's claim, this Court recognizes the legal maxim that attorneys are permitted wide latitude during closing argument. Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009), cert. denied, 562 U.S. 1145 (2011).   Also, it is important to place the argument in context, recognizing that often that prosecutor's remarks are in response to argument made by defense counsel, or are meant to be read as part of a more complete argument.

Regarding the first comment at issue, the court found Petitioner did not satisfy the prejudice prong of <u>Strickland</u>.   With regard to the second comment at issue, the state court rejected the claim of deficient performance.

In denying post-conviction relief, the circuit court properly applied the two-pronged <u>Strickland</u> standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on <u>Strickland</u>.   Further, Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its <u>Strickland</u> inquiry.   Furthermore, the 5th DCA affirmed.

The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth Amendment or Fourteenth Amendment violation under the United States Constitution.   In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and its

46

progeny or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground ten.

### K.   Ground Eleven

Petitioner, in his final ground, raises a claim of ineffective assistance of counsel for misadvising Petitioner that he would receive a three-year prison sentence if he entered an open plea of nolo contendere to the offense of possession of a firearm by a convicted felon.   Petition at 34-35.   He contends, "Ms. Peshek misadvised Mr. Solano that he would receive a minimum mandatory three-year prison sentence if he entered an open plea of nolo contendere to [possession of a firearm by a convicted felon] and, based on Ms. Peshek's advise, he entered an open plea of nolo contendere to that charge." Id. at 34.   He complains, "[r]ather than receiving the three-year sentence Ms. Peshek had promised, however, Mr. Solano was sentenced to a term of 15-years in prison for that offense."   Id.   Petitioner contends but for that misadvise, he would have insisted upon going to trial on that charge.   Id.

In Claim G of his Amended Motion for Postconviction Relief Petitioner presented a similar claim.   Ex. J at 876-80.   The circuit court denied this ground.   Id. at 985-88.   The 5th DCA affirmed per curiam.   Ex. K.

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>Finch v. Vaughn</u>, 67 F.3d 909, 914 (11th Cir. 1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).   Indeed, a defendant's solemn declarations in open court carry a strong presumption of verity.   Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible based on the record.

The standards set forth in <u>Strickland</u> and <u>Hill</u> are applicable as Petitioner entered a plea.   Upon review, Petitioner has not satisfied the "contrary to" test of 28 U.S.C. § 2254(d)(1).   Next, the Court's considers whether the state court unreasonably applied that principle to the facts or premised its adjudication of the claim on an unreasonable determination of the facts.

Petitioner was sworn in and the court conducted a thorough colloquy. Ex. A at 697-98.   Petitioner confirmed that he wanted to enter a plea of no contest to the second-degree felony charge of possession of a firearm by a convicted felon.   <u>Id</u>. at 698.   The court stated: "[t]hat is a crime that's punishable by up to 15 years in the state prison, 10,000-dollar fine, or both. You may be considered for a lesser sentence."   <u>Id</u>.   The court advised, "[t]he other thing is I believe since they found in actual possession, it would be a three-year minimum mandatory I believe.   <u>Id</u>.

Petitioner stated he could read and write, and English is his primary language.   <u>Id</u>. at 699.   He said he was married, worked underground utilities, and is a United States citizen.   <u>Id</u>.   He noted he had been treated for a mental or emotional disability and was currently taking medications.   <u>Id</u>. at 699-700. He assured the court that the medication did not impair his ability to understand the proceeding.   <u>Id</u>. at 700.   Petitioner told the court he had taken no drugs or alcohol within the past 24 hours.   <u>Id</u>.

The Court advised Petitioner of his constitutional rights and the rights he was giving up by pleading guilty.   <u>Id</u>. at 700-702.   Petitioner told the court no one had used any force, threats, pressure, or intimidation to get him to plead to this count.   <u>Id</u>. at 702.

The court inquired, "[o]ther than the fact you're plea[d]ing to the Court in this count, has anyone promised you anything to get you to enter this plea?" Id. Petitioner responded in the negative. Id. The court asked if Petitioner had discussed his plea with his counsel, and Petitioner responded yes, and he was satisfied with their representation. Id. at 702-703. The prosecutor proffered the facts: "Herman Solano on or about July 29th, 2015, was in actual possession of a firearm and he had been previously convicted of a felony, contrary to Florida statute." Id. at 703. Ms. Peshek made no objection to the proffer. Id.

Once again the court asked if there were any hidden promises or understandings: "Mr. Solano, has anyone coached you or told you to testify falsely because of any promise or understanding which has not been told to me?" Id. Petitioner responded, no. Id. Petitioner stated he believed the plea was in his best interest. Id.

The court found Petitioner to be alert and intelligent. Id. at 703-704. The court also found Petitioner understood the nature and consequences of the plea. Id. at 704. The court further found there was a factual basis to sustain the plea. Id. As such, the court accepted the plea. Id. The court sentenced Petitioner to a term of 15 years in prison. Id. at 314.

Petitioner faces the formidable barrier of his sworn testimony and representation at the plea hearing.   His solemn declarations are not taken lightly and carry a strong presumption of verity.   Petitioner's contentions to the contrary are wholly incredible in view of the record.   Also, his attempt to go behind his previously sworn testimony is not well received.

During the plea colloquy the court made certain Petitioner was aware of the charge he faced and the maximum penalty for that offense.   After hearing the court's admonishments and maximum exposure, Petitioner remained determined to plead no contest, knowing that the court could consider a lesser sentence, but he still faced a maximum sentence of 15 years.   Furthermore, Petitioner assured the court no promises had been made.

Also of import, at sentencing, the state introduced the documentation showing Petitioner qualified as a prison release reoffender.   Ex. A at 311-312. The prosecutor asked for the maximum sentence on all counts.   Id. at 312.   At sentencing, the court designated Petitioner a prison release reoffender.   Id. at 315.   Petitioner received a term of 364 days for count I, a term of 15 years for counts II, IV, & V (the possession of a firearm count), 5 years for count III, and life for count VI as a prison release reoffender.   Id. at 172-80.   As a prison release reoffender, Petitioner must serve 100 percent of his life sentence and

not be eligible for parole, control release, or any form of early release.   Id. at 177.

The seminal case of Hill v. Lockhart is the guiding source of applicable Supreme Court law along with Strickland regarding a challenge to the voluntariness of a guilty plea.   Petitioner has not satisfied the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court soundly rejected Petitioner's claim after applying the standards set forth in Strickland and Hill.   Ex. J at 959-61.   Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland and Hill or unreasonably determined the facts.   Notably, in its Order Denying Defendant's Amended Motion for Postconviction Relief, the court stated the principal issue it must address is whether Petitioner demonstrated a reasonable probability that he would have insisted on going to trial if counsel had not misadvised him as to the consequences of an open plea.   Ex. J at 986-87.   The court looked to Petitioner's entire theory of defense, to which he testified at trial.   He attested that he carried a handgun to Mrs. Solano's residence with the intention of shooting himself in front of her.   Id. at 987.

Not only did Petitioner admit having the gun he also admitted to having been previously convicted of six felonies.   Id.   These factors were compounded by the fact that the jury specifically found Petitioner in possession of a firearm

during the commission of the offense of aggravated battery with a deadly weapon.  Id.  Ex. A at 121.   As such, the court found, "the record conclusively demonstrates that no prejudice resulted from counsel's alleged failure to properly advise Defendant of the sentence he would receive if he pled open to the possession of a firearm offense."  Id. at 987-88.   There is simply no reasonable probability that Petitioner would have insisted on going to trial under these circumstances.

Upon due consideration, the state court was objectively reasonable in its inquiry and the 5th DCA affirmed the circuit court's decision.   The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground eleven of the Petition.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.   This action is **DISMISSED WITH PREJUDICE**.

3.      The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**. [11]      Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2023.

_____
BRIAN J. DAVIS
United States District Judge

sa 7/31
c:
Herman Paul Solano
Counsel of Record

---

[11] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.